**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

LINDA NWOGA,
c/o Obed Law, PLLC
429 North Saint Asaph Street
Alexandria, VA 22314
Plaintiff,
v.

NORTHERN VIRGINIA MENTAL HEALTH INSTITUTE,
SERVE: 3302 Gallows Road
Falls Church, VA 22042

Co-Defendant,

NELSON SMITH, COMMISSIONER of VIRGINIA DEPARTMENT OF BEHAVIORAL HEALTH AND DEVELOPMENTAL SERVICES
SERVE: 1220 Bank Street
Richmond, VA 23219
Co-Defendant.

Civil Action No.: 1:24-cv-1393

COMPLAINT FOR VIOLATIONS OF FEDERAL CIVIL RIGHTS PURSUANT TO 42 U.S.C. §2000e, THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §1981, and WRONGFUL DISCHARGE AGAINST VIRGINIA PUBLIC POLICY, DEMAND FOR DAMAGES, AND JURY TRIAL

**COMPLAINT**

Plaintiff LINDA NWOGA ("Ms. Nwoga or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendants Northern Virginia Mental Health Institute ("NVMHI") and Department of Behavioral Health and Developmental Services ("DBHDS") (together "Defendants"), and in support alleges:

**NATURE OF THIS ACTION**

1. This civil action includes claims for damages and equitable relief against Defendants, brought in part pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"). Plaintiff seeks redress under Counts I and II for Defendant's

unlawful employment practices, including discrimination based on race (African), color (black), national origin (Nigerian-American) and retaliation for protected activity.

2. This civil action also includes a claim for damages and equitable relief against Defendants brought pursuant to 42 U.S.C. §1981 ("Section 1981"). Plaintiff seeks redress under Count III for Defendant's unlawful discrimination with Plaintiff's contractual rights because of Plaintiff's race in violation of Section 1981.

3. This civil action also includes claims for damages and equitable relief against Defendants brought pursuant to the Americans with Disability Act ("ADA") prohibiting discrimination and retaliation against an employee on the basis of a disability, 42 U.S.C. §12101 et seq.; §12112; 29 CFR §1630.9 under Counts IV-VI.

4. And finally, this civil action also includes a claim prohibiting wrongful discharge in violation of Virginia public policy/policies under Count VII.

5. Plaintiff seeks more than $75,000 for each claim alleged herein.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

7. The United States District Court for the Eastern District of Virginia is a proper venue for this action under 28 U.S.C. § 1391(b)(2) because upon information and belief a substantial part of the events giving rise to this action occurred in this district.

8. Ms. Nwoga has fully exhausted her administrative remedies as she previously filed an EEOC Charge of Discrimination and an Amended Charge of Discrimination, Charge Number 570-2023-00732, a true and accurate copy of which is attached as "Exhibit 1", its allegations 1-40 of the Amended Charge of Discrimination incorporated in fully by reference.

9. Plaintiff filed her initial Charge of Discrimination on or around September 13, 2023 and filed her Amended Charge of Discrimination on or around December 31, 2023.

10. The EEOC issued a "Determination and Notice of Rights" letter to Ms. Nwoga, mailed and emailed on May 10, 2024 notifying Ms. Nwoga of her right to file claims in federal court within ninety (90) days of receipt, a true and accurate copy of the letter is attached as "Exhibit 2".

11. Upon information and belief, all statutory conditions precedent to the initiation of this lawsuit have been fulfilled, or equitably complied with.

## PARTIES

12. Plaintiff Linda Nwoga, a resident of Alexandria, Virginia, is a black female of African (Nigerian) descent/ethnic origin, and African-American, with a Ph. D as a trained psychologist.

13. DBHDS is a Commonwealth of Virginia agency located at 1220 Bank Street, Richmond, Virginia 23219 providing services to individuals with behavioral health disorders and developmental disabilities with over 500 employees (and not less than 15) and a current Commission Nelson Smith.

14. NVMHI is a residential psychiatric treatment facility operated by DBHDS providing services to over 100 individuals with behavioral health disorders, employing over 15 and up to 100 employees, located at 3302 Gallows Road, Falls Church, Virginia 22304.

## FACTS

15. Plaintiff was employed by Defendants beginning April 10, 2022 as a Psychology Associate II (Pay Band 5, Position No. 00252).

16. Plaintiff's work included psychological evaluations/assessments, planning, and treatment, evaluating the risk of identified concerns regarding patients/potential patients and contribute to planning treatment and psychotherapeutic services on an individualized basis.

17. At all relevant times, Plaintiff performed her job satisfactorily and met her employer's legitimate business expectations.

18. When Plaintiff was employed by Defendants, she developed recurrent long-lasting rhinosinusitis, mold allergies, in connection with being exposed to mold and adverse air quality in her workplace with Defendants, permeating throughout the building at 3302 Gallows Road, and particularly in the Plaintiff's office space(s) and wherever the air vent and the connected HVAC system cycled air.

19. True and accurate photographs taken by Plaintiff reflecting her workspace with Defendants from April 2022 are attached as "Exhibit 3".

20. On August 2, 2022 Plaintiff met with Director of Psychology and Forensic Services Dr. Azure Baron regarding Plaintiff's concerns regarding deleterious indoor air quality in her work office, the difficulty having the issue addressed, the adverse impact on her health and well-being, and the necessity to use sick leave as a result of the deleterious indoor quality. See Amended Charge, ¶12.

21. Despite Plaintiff informing Dr. Baron of her workplace injuries, Dr. Baron did not have an injury report filed. Instead, Dr. Baron suggested that Plaintiff work in a different unit with a different position outside of Dr. Baron's supervision.

22. Dr. Baron reacted with hostility and annoyance and took issue with Plaintiff's efforts to address her workplace injury and the unsafe working environment she was subjected to, by creating new unnecessary job tasks, completing unnecessary forms, and over-scrutinizing

Plaintiff's work while being overly critical of Plaintiff and falsely claiming Plaintiff had made certain errors to other co-workers and colleagues. See Am. Charge, ¶¶13-19.

23. On or around November 17, 2023 Dr. Baron and Director of Building and Grounds Anthony Thomas stated incorrectly that indoor air quality test(s) had been performed in Plaintiff's office and no mold or allergens were found.

24. When Plaintiff pressed the workplace safety concerns of poor air quality in a follow-up meeting December 2, 2022, Dr. Baron and an HR worker Sudipta Upadhyay stated to the effect that if Plaintiff was going to make an issue of her workplace environment and health issues then Plaintiff should transfer to another hospital, which Plaintiff reasonably took to be a threat to end her employment if she voiced further complaints concerning workplace safety and the desire to work in a safe environment with adequate air quality. See Am. Charge, ¶21.

25. In early January of 2023, Plaintiff complained to HR Director Eileen Elliot about the issues she faced from Dr. Baron, explaining that she faced racial discrimination, disability discrimination, and discrimination for pursuing workplace safety concerns. See Am. Charge, ¶28.

26. Plaintiff learned that Dr. Baron had spoken negatively about Plaintiff after learning of the complaints to HR, such negative statements being made motivated in part by the HR complaints specifically.

27. On one occasion, it was reported that Dr. Baron stated to Facility Director Amy Smiley that Plaintiff was "dangerous".

28. Plaintiff took the reference to Plaintiff as dangerous to be racially coded, within the context of the racially aware workplace environment. The description also carried particularly heavy connotations in the mental health facility where they worked, an environment where

employees are charged with caring for and helping individuals exhibiting dangerous behavior, having dangerous thoughts, or other tendencies which are a danger in some way.

29. Plaintiff met with Ms. Smiley and Ms. Elliot (both white) concerning discrimination and retaliation complaints on or around January 12, 2023 and voiced concerns about inequitable treatment between Plaintiff and white colleagues. See Am. Charge ¶29.

30. Meanwhile, Plaintiff was still working in conditions with adverse air quality.

31. Back when Plaintiff's initial workspace, Room K-212 was tested on or around December 8, 2022, high levels of mold were found. See. Am. Charge, ¶23.

32. Plaintiff's rhinosinusitis and mold allergies were diagnosed on and no later than January 7, 2023, and substantially limited major life activities, to include but not be limited to breathing, thinking, concentrating, and working due to adverse respiratory, sinus, gastrointestinal, and eye symptoms from the condition and poor air quality.

33. During Plaintiff's time working for Defendants in her workspace, she was subjected to adverse air quality comprised of mold, elevated and prolonged moisture levels, and other indicia of poor air quality for her compromised condition(s).

34. Defendants, by and through Defendants' supervisors, namely Dr. Azure Baron and other supervisors had reason to know of the poor air quality and potential for unsafe working conditions from poor air quality in Plaintiff's workspace and the building in general.

35. Plaintiff's medical provider, All Care Alexandria at 3117 Duke Street, Alexandria, Virginia, Dr. Gandharv Telhan, DO and Dr. Treya Browning, DO saw Plaintiff and provided three respective work-related accommodation requests, true and accurate copies of which are attached as "Exhibit 4".

36. On January 7, 2023 Plaintiff's medical provider provided for Defendants a request for Plaintiff to be placed in a different office that is not connected to the problematic HVAC unit.

37. Plaintiff was placed in a Psychology Extern office (Room AB-7), but that room was dirty and had similarly poor air quality.

38. Plaintiff's CT scan led her provider to diagnose her with Allergic Fungal Sinusitis, related to and encompassing chronic long-lasting rhinosinusitis caused by prolonged exposure to elevated mold levels in her initial office (K-212) and AB-7. See Am. Charge, ¶26

39. On February 9, 2023 Plaintiff's medical provider provided for Defendants a request for Plaintiff to work remotely due to "poor indoor quality at her place of employment." This was provided to HR Director Eileen Elliot on or around February 13, 2023.

40. Further indoor air quality testing in February of 2023 for AB-7 and E-208 revealed mold spores present in both offices, to which Plaintiff was now more susceptible having developed a condition while working for Defendants.

41. On March 2, 2023 Plaintiff's medical provider provided for Defendants a request to work remotely due to the deleterious air quality problems at Plaintiff's place of work.

42. On February 27, 2023 Plaintiff filed a complaint against Dr. Baron with Virginia's Office of the State Inspector General ("OSIG"). See Am. Charge, ¶31.

43. At some point after February 27, 2023 and before March 31, 2023, Dr. Baron learned of Plaintiff's OSIG Complaint or had reason to know a complaint had been filed or would be filed.

44. All of Plaintiff's essential job functions could be performed remotely.

45. Plaintiff successfully worked remotely between early February 2023 and late March 2023.

46. Plaintiff was not expected to provide any in-person coverage on department rotation.

47. On March 31, 2023 Dr. Baron informed Plaintiff that she no longer could work remotely and that if she did not return on-site to work on April 5, 2023 her job would be terminated. A true and accurate copy of the letter is attached as "Exhibit 5".

48. Meanwhile, Plaintiff needed further medical evaluations and visits to determine her medical needs, understand her medical conditions, and further clarity on the workplace conditions her employer would be able to provide given her conditions and susceptibility to mold and other environmental factors.

49. On April 5, 2023 Plaintiff provided Dr. Baron and Ms. Elliot an overview of the issues presented, to include further need for medical evaluation by an Otolaryngologist. See Am. Charge, ¶¶35-36.

50. On April 5, 2023 Dr. Baron and Defendants terminated Plaintiff's employment. A true and accurate copy of the separation letter is attached as "Exhibit 6".

51. Defendants revoked Plaintiff's accommodations and foreclosed on any opportunity to engage in an interactive process to determine the length of potential accommodations needed or other reasonable accommodations by firing Plaintiff on April 5th.

52. Other non-black, non-African similarly situated employees were granted full-time telework by NVMHI, such as Dr. Anita Trivedi (Asian, India origin (Indian-American), with the same or substantially same job as Plaintiff.

**STATEMENT OF CLAIMS**

**COUNT I**

## UNLAWFUL DISCRIMINATION ON THE BASIS OF RACE, COLOR, AND NATIONAL ORIGIN UNDER TITLE VII

53. All prior paragraphs are incorporated herein by reference.

54. Dr. Nwoga was terminated by Dr. Baron where each of the following protected classes were a motivating factor in the decision to terminate Dr. Nwoga's employment: race (African/African-American), color (black), national origin (Nigerian/African).

55. Dr. Nwoga faced unjust criticism and false accusations related to her work by Dr. Baron where similarly situated non-African/African-Americans, non-black, and non-Nigerian/Africans were treated more favorably.

56. Dr. Nwoga's complaints to HR and Dr. Baron were not taken seriously and held against because of her protected classes (¶53 supra).

57. Dr. Nwoga was denied accommodations (telework) where other similarly situated individuals not of Dr. Nwoga's protected classes were granted telework (whether or not as an accommodation).

58. Defendants' discrimination against Plaintiff for her protected classes culminated in the adverse action of termination of her employment by Dr. Baron and HR.

WHEREFORE, Plaintiff requests:

A. Compensation for all injury and damages suffered by Plaintiff including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. Plaintiff's reasonable attorneys' fees, expert fees, and costs as provided by law and pursuant to Title VII and 42 U.S.C. §1988;

C. For such equitable relief necessary to make Plaintiff whole;

D. For Injunctive and Declaratory Relief in the form of the implementation of anti-discrimination policies and training for Dr. Baron and Defendants' HR; and

E. For such other and further relief as this Court deems just and equitable.

## COUNT II

### UNLAWFUL RETALIATION ON THE BASIS OF PROTECTED ACTIVITY UNDER TITLE VII

59. All prior paragraphs are incorporated herein by reference.

60. Plaintiff's engagement in protected activities included complaining to HR about discrimination from Dr. Baron. Am. Charge ¶28.

61. Dr. Baron and HR placed undue scrutiny on Plaintiff after the complaints, failed to address the concerns regarding workplace discrimination and regarding workplace safety.

62. In response to Plaintiff's complaints, Defendants ultimately denied her accommodation request, refused to engage in any interactive process, and fired Plaintiff out of retaliation for her complaints related to her race, color, and national origin.

WHEREFORE, Dr. Nwoga requests:

A. Compensation for all injury and damages suffered by Dr. Nwoga including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. Plaintiff's reasonable attorneys' fees, expert fees, and costs as provided by law and pursuant to Title VII and 42 U.S.C. §1988;

C. For such equitable relief necessary to make Dr. Nwoga whole;

D. For Injunctive and Declaratory Relief in the form of the implementation of anti-discrimination policies and training for Plaintiff's supervisors and Defendants' HR; and

E. For such other and further relief as this Court deems just and equitable.

## COUNT III

### UNLAWFUL DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

63. All prior paragraphs are incorporated herein by reference.

64. Dr. Nwoga is African-American, thus a member of a racial minority protected under Section 1981 against employment discrimination.

65. Defendants offered and Plaintiff accepted an offer of employment for consideration forming a contract of employment between the parties protected under 42 U.S.C. §1981.

66. Defendants' intent to discriminate against Plaintiff's employment contract rights on the basis of her race is evident in a pattern of treatment that distinctly affected her as an African-American employee in comparison to other similarly situated employees.

67. The discriminatory actions Plaintiff experienced on the basis of race were the but-for cause of Defendants' decision to terminate her employment.

68. Defendants' interference with Plaintiff's employment contract rights impacted her ability to perform job duties, receive fair evaluations, and enjoy equal opportunities for recognition and advancement, most notably reasonable accommodation and the ability to work in a safe work environment.

69. As a direct result of Defendants' discriminatory actions, Dr. Nwoga suffered significant damages, including loss of income, benefits, and professional opportunities, as well as emotional distress and harm to his reputation.

WHEREFORE, Dr. Nwoga requests:

A. Compensation for all injury and damages suffered including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. Plaintiff's reasonable attorneys' fees, expert fees, and costs as provided by law and pursuant to 42 U.S.C. §1988;

C. For such equitable relief necessary to make Plaintiff whole;

D. For Injunctive and Declaratory Relief in the form of the implementation of anti-discrimination policies and training of Plaintiff's supervisors and Defendants' HR; and

E. For such other and further relief as this Court deems just and equitable.

**COUNTS IV-VI (facts and damages in common):**

**(I) UNLAWFUL DISCRIMINATION ON THE BASIS OF A DISABILITY (REACTIVE AIRWAY DISEASE); (II) FAILURE TO ACCOMMODATE; and (III) RETALIATION FOR PURSUING ACCOMMODATION; in contravention of 42 U.S.C. §12112 (§12111 et seq.); 29 CFR §1630.9; and the ADA generally (42 U.S.C. §12101 et seq.)**

70. All prior paragraphs are incorporated herein by reference.

71. Defendants are a covered entity under 42 U.S.C. §12111(2).

72. Plaintiff, having Allergic Fungal Sinusitis diagnosed March 2, 2023, among other related and encompassed conditions elaborated herein, is a member of the protected class under the ADA, having a disability substantially limiting numerous life activities including breathing, concentrating, and sleeping.

73. Defendants regarded Plaintiff as having a disability under the ADA and were aware, to include Dr. Baron and HR, of Plaintiff's disability or otherwise aware that she was regarded as having a disability.

74. Defendants failed to engage in the interactive process to explore what reasonable accommodations could be found for Plaintiff's disability.

75. Defendants did not adequately address or adequately investigate Plaintiff's concerns about workplace air quality or take adequate measures to address poor workplace air quality, or present any solutions to address workplace air quality itself to Plaintiff.

76. Defendants failed to identify Plaintiff's essential functions of her job and whether or not such functions could be performed remotely.

77. Other similarly situated employees worked remotely having the same essential job functions.

78. Dr. Baron and Defendants knew or should have known that poor air quality on-site posed a particular danger to Plaintiff given her disability.

79. Dr. Baron and Defendants exerted undue pressure upon Plaintiff to stop Plaintiff from trying to address workplace safety concerns regarding her disability (air quality concerns), interfering with Plaintiff's rights to pursue accommodations and denying Plaintiff privileges of employment.

80. Defendants used Defendants' own failure to remediate its unsafe workplace conditions as a pretext and unfounded excuse to deny Plaintiff accommodations and terminate her employment.

81. In retaliation for seeking accommodations and a safe workplace environment, Defendants terminated Plaintiff's employment.

82. As a direct and proximate cause of Defendants' unlawful conduct in violation of the ADA, Plaintiff has suffered economic damages and benefits of employment in an amount to be proved at trial, and non-economic damages for significant loss of quality of life, pain and suffering, and emotional distress.

WHEREFORE, Plaintiff requests in Counts IV-VI under the ADA 42 U.S.C. §12101 et seq.:

A. Compensation for all injury and damages suffered by Plaintiff including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. Plaintiff's reasonable attorneys' fees, expert fees, and costs as provided by law and 42 U.S.C. §12205;

C. For such equitable relief necessary to make Plaintiff whole; and

E. For such other and further relief as this Court deems just and equitable.

**CLAIM VII (WRONGFUL TERMINATION IN VIOLATION OF VIRGINIA PUBLIC POLICY)**

83. All previous paragraphs are incorporated herein by reference.

84. It is public policy in Virginia that workplaces be safe for employees pursuant to Virginia Occupational Safety and Health Program ("VOSH") and the federal Occupational Safety and Health Act of 1970 ("OSHA"), both of which provide avenues for workers to raise concerns about workplace safety.

85. It is public policy in Virginia not to retaliate against employees who voice workplace safety concerns, or similarly who identify issues with cleanliness, mold, or air quality. See Va. Code §40.1-51.2:1 -2:2; 29 U.S.C. §652, et seq. (OSHA).

86. Defendants terminated Plaintiff's employment for attempting to report workplace safety concerns, health concerns, and seek to improve air quality at the facility she worked, all Virginia public policies.

87. The concerns Plaintiff raised regarding air quality demonstrated persistent moisture management issues in Plaintiff's unit, the HVAC system, and the potential for further moisture issues throughout the building on-site.

88. The site of Plaintiff's work was a facility which included rooms where patients would stay, and the potential for air quality concerns raised by Plaintiff may have led to further issues identified in areas where patients stayed, such that Plaintiff's attempts to improve air quality and air quality control standards at her place of employment also pertained to Virginia's public policy to provide mental health patients with safe quarters free from air quality problems, excessive moisture, or mold.

89. As a proximate cause of Defendants' wrongful termination of Plaintiff in violation of various public policies, Plaintiff suffered damages, including but not limited to loss

of employment and career opportunities, economic and non-economic damages, and other damages.

WHEREFORE, Plaintiff requests under Count VII:

A. Compensation for all injury and damages suffered including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. For such equitable relief necessary to make Plaintiff whole; and

C. For such other and further relief as this Court deems just and equitable.

DATED: August 8, 2024.

LINDA NWOGA, *Plaintiff*
By Counsel:

OBED LAW, PLLC

By: /s/

Seth James B. Obed, VSB #82482
OBED LAW, PLLC
429 North Saint Asaph Street
Alexandria, VA 22314
[t](703) 567-4052; [f](703) 894-4940
sobed@obedlaw.com
***Counsel for Plaintiff***

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38 or any similar rule of law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

By: /s/
Seth James B. Obed, VSB # 82482